Luis L. GONZALES, Plaintiff,

v.

VAN'S CHEVROLET, INC., a Delaware Corporation, Defendant,

VAN'S CHEVROLET, INC., a Delaware Corporation, Third Party Plaintiff,

v.

Albert J. KELLER, Third Party Defendant.

Civ. A. No. 79–432.

United States District Court, D. Delaware.

Aug. 27, 1980.

On Petition for Attorney's Fees Sept. 16, 1980.

Richard P. S. Hannum, of Prickett, Jones, Elliott & Kristol, Wilmington, Del., for plaintiff.

John G. Mulford, of Theisen, Lank, Mulford & Goldberg, Wilmington, Del., for defendant and third–party plaintiff.

## OPINION

STEEL, Senior District Judge.

Plaintiff, who had purchased a used car from defendant, a dealer in new and used cars, brought an action under 15 U.S.C. § 1989 (1976) charging defendant with violating Section 1988 by knowingly having given plaintiff a false statement concerning the mileage on the car with the intent to defraud plaintiff. Following a two and one–half day jury trial, the jury returned a verdict for $2,368.66 in actual damages. As required by Section 1989, the Court trebled

this amount and entered judgment for $7,105.98.

Defendant has moved for a new trial or alternatively a remittitur.

■ Defendant argues that it is apparent from the amount of the verdict that it was based upon two things: (1) the difference between the amount plaintiff paid the defendant and the fair market retail value of the car having the correct mileage, and (2) the cost of the repairs for which plaintiff paid after he bought the car. The verdict was consistent with the Court's charge that:

In determining damages, you are to consider the difference between the fair market value of the car with the actual miles thereon and the amount paid for the automobile by Plaintiff.

You are also to add to the above sum any other damages you find Plaintiff has incurred.

This charge was requested by the defendants. It, together with the charge with respect to proximate cause which preceded it, is supported by the law stated by the Court in the nonjury case of *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381, 1388 (D.Neb.1977), *aff'd*, 578 F.2d 721 (8th Cir. 1978). It is also in accord with general rules governing recovery for false representations in sales transactions. *See* 11 Williston, A Treatise on the Law of Contracts ¶ 1391 (3d Ed. 1968); 12 *Id.*, § 1514; U.C.C. §§ 2–714, 2–721.

The defendant contends, however, that it was error for the Court to fail to give immediately after the charge as given the following instruction which the defendant had also requested.

From the above sum you are to subtract the value of the car to the Plaintiff during the period of time the Plaintiff owned and operated the car.

You are also to subtract from the sum to be awarded the amount received from the Plaintiff from the sale of the vehicle.

■ It would have been improper for the Court to have instructed the jury that it might deduct the $1,000 which plaintiff re-

ceived when he sold the car from any damage which it found in plaintiff's favor. For the Court to have done so would have violated the collateral source rule. *See Thornton v. Carroll,* 490 F.Supp. 455, 458 (D.Del. 1980); *Yarrington v. Thornburg,* 58 Del. 152, 154–55, 205 A.2d 1, 2 (1964); Restatement (Second) of Torts § 920A(2) (1979).

*Klein v. Pincus,* 397 F.Supp. 847 (E.D.N.Y.1975), the only authority relied upon by defendant, is not at variance with the collateral source rule and indeed is entirely irrelevant. While the opinion in *Klein* revealed the price which plaintiff paid when he purchased the car, there was no direct evidence as to what the car would have been worth at the time if the correct mileage were known. This latter figure was computed by the Court, taking the resale value and adding to it the amount which the evidence showed the car had depreciated after plaintiff had purchased it. No such computation was required in the case at bar, because evidence of the fair market value of the car had been offered.

■ Defendant also contends that in determining the damages which plaintiff sustained the jury should have been instructed to subtract the value of the use of the car to plaintiff while it was in his possession, a period of more than six months, during which plaintiff drove the car over 12,000 miles. Defendant cites no case to support this contention. In stating the formula to be used by the trier of facts in computing damages, the *Duval* case says nothing about the value of the use of the car as having any relevance. Furthermore, in the present case there was no evidence before the jury upon which it could make a finding as to the use value of the car to plaintiff. It was not error for the Court to omit defendant's request for instructions on plaintiff's use of the car.

Defendant's second area of contention is that "it is obvious that the plaintiff was awarded all the repair costs," and that there was insufficient evidence that the repairs would not have been required if the car had been a low–mileage vehicle as represented.

■ It is now too late for defendant to argue that there was insufficient evidence to link the repairs to the mileage of the vehicle. Defendant itself requested that the jury be instructed to award to plaintiff, in addition to the difference between the price paid and the fair market value of the car, "any other damages you find Plaintiff has incurred." The jury was further instructed to limit its award to those damages proximately caused by defendant's acts. The only evidence of "other damages" suffered by the plaintiff consisted of the repair bills, all of which were received into evidence without objection. After all the evidence was in, defendant was given two opportunities–at the prayer conference and immediately after the charge was given–to object to the "other damages" instruction on the ground that there was no evidence to warrant its being given. Defendant did not so object on either occasion. *See* Fed.R. Civ.P. 51. For defendant to argue now that there was no evidence to support the jury's award of the repair costs is inconsistent with its request of the "other damages" instruction and later failure to object to the giving of that instruction. Defendant cannot now complain about the verdict which was consistent with the instruction it requested.

In addition, it is not "obvious" that the jury awarded all of the repair costs claimed by the plaintiff. The jury's verdict was in the single amount of $2,368.66. It is impossible to know what amount the jury awarded for the difference between price paid and market value, and what amount was awarded for repairs. The evidence was in conflict as to the fair market value of the car. There was testimony that a 1976 Chevrolet Nova with over 80,000 miles could be worth: $800.00 (Albert Keller, and PX–11F); $1,375.00 (James Delk); $1,400.00 (Julian Sheats); $1,600.00 (Richard Diver and DX–3). The jury could have accepted Keller's figure of $800, which, when subtracted from the $3,100 that plaintiff paid for the car, leaves $2,300. If the jury reached its verdict in this way, it must have awarded only $68.66 for repairs, only a minimal amount of the repair costs claimed.

For the foregoing reasons, defendant's motion for a new trial or a remittitur will be denied.

## ON PETITION FOR ATTORNEYS' FEES

The attorney for plaintiff who prevailed in an action under the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1989 (1976), has petitioned the Court to award him under Section 1989(a)(2) the "costs of the action together with reasonable attorney fees." Plaintiff seeks an award of $10,000 plus $1,919.29 to reimburse plaintiff for expenses accrued by plaintiff and petitioner. The latter figure is made up of the following items:

| | | |
|---|---|---:|
| (a) | Depositions | 423.30 |
| (b) | Document Reproduction | 266.40 |
| (c) | Postage | 171.79 |
| (d) | Outside Copies | .50 |
| (e) | Secretarial Overtime | 266.25 |
| (f) | Telephone | 229.05 |
| (g) | Travel Between England and the United States | 538.00 |
| (h) | Transportation Expense in the United States | 20.00 |
| (i) | Certified Copy of Motor Vehicle Record | 4.00 |
| | | $1,919.29 * |

Defendant does not object to the allowance of items (a), (b) and (i) which total $693.70. These items of cost will be allowed.

Defendant does object to items (c), (d), (e), (f), (g) and (h). Rule 6.1(B) of the District Rules specifies items taxable as costs. The items in (c), (d), (e), (f), (g) and (h) are not designated in the Rule as allowable. Subparagraph 11 of subpart B provides that costs other than those specifically mentioned in Rule subpart B "ordinarily will not be allowed, unless the party claiming such costs substantiates his claim by reference to a statute or binding court decision." The plaintiff has provided the Court

* In the last sentence of the petition $1,882.49 is specified without explanation as the award sought.

with no such substantiation. Consequently, items designated (c), (d), (e), (f), (g) and (h) will be disallowed.

Various decisions support this conclusion. In *Wahl v. Carrier Manufacturing Co.*, 511 F.2d 209 (7th Cir. 1975), the Court held that neither typing charges nor attorney travel expenses could be recoverable as costs under 28 U.S.C. § 1920. *Accord, Chemical Bank v. Kimmel*, 68 F.R.D. 679, 685 (D.Del. 1975). Similarly, in *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F.Supp. 1195 (S.D.N.Y.1979), the Court decided that in an antitrust case, the Clayton Act could not support an award for costs of travel, messenger service, secretarial overtime, long distance telephone calls, or extraordinary postage. "Although such items are properly billable to a client, they are not properly includible in an allowance for costs under 15 U.S.C. § 15." *Id.* at 1198.

Petitioner also seeks to recover $756.25 as part of his fees for the 30.25 hours of services of Mark Thompson, a law clerk in petitioner's office who researched a number of legal issues and prepared memoranda for submission to the Court in assisting petitioner with the case. Petitioner supports the claim with time slips.

While cases have permitted the billing of services of paraprofessionals on an hourly basis as properly included as part of awards for attorney's fees, *see, e. g., Aumiller v. University of Delaware*, 455 F.Supp. 676, 681–82 nn.12 & 13 (D.Del.1978), *aff'd*, 594 F.2d 854 (3d Cir. 1979); *In re Anthracite Coal Antitrust Litigation*, 81 F.R.D. 499, 509 (M.D.Pa.1979); *Transamerica Insurance Co. v. Keown*, 85 F.R.D. 120, 126–29 (D.N.J. 1980), defendant objects to any allowance based upon the services of Mark Thompson because of lack of proof. Defendant points out that petitioner has failed to establish that law clerk services are billed to its clients in cases such as this on the basis of an hourly rate, and that such a practice is reasonable and common in the area in which petitioner is located.

■ Despite the fact that defendant stressed the omission in plaintiff's initial proof, plaintiff has made no attempt to supply it when he filed his reply to the defendant's objection. An allowance of costs based upon the services of Mark Thompson, therefore, will be disallowed.

With respect to the fee to be awarded to plaintiff's attorney, the record discloses that he spent 82.5 hours of time on plaintiff's behalf for which he charged $75 an hour, a reasonable fee. On the basis of time alone the fee totals $6,187.50. This is the "lodestar" for judicial determination of the fee. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973) (*Lindy I*); *Hughes v. Repko*, 578 F.2d 483, 486 (3d Cir. 1978). Defendant does not challenge either the time spent by plaintiff's attorney or the rate which he charged and concedes that $6,187.50 would be an allowable fee. But under *Lindy I, supra* at 168, two factors in addition to the lodestar must be determined by a court in making a fee award: the contingent nature of success and the quality of the attorney's work as reflected by the complexity and novelty of the issues presented. Here the attorney had agreed with plaintiff to perform services on a contingent basis and to look solely to the defendant for compensation. In preparing and trying the case petitioner's professional performance was most creditable. It ill–behooves defendant from arguing that there was nothing unusual of financially risky about the case, where at an early stage in response to plaintiff's attempt to settle the case defendant refused to make any offer of settlement, saying that defendant "did nothing wrong in the transaction." Confronted as he was with defendant's adamant position, petitioner was required to try the case to the hilt. This necessitated a two and a half day trial and resulted in a verdict which was substantially what petitioner had sought to obtain. The trebling of the verdict was, of course, required by law. The settlement which petitioner had proposed to defendant included an attorney's fee of $1,000.00. The objection which defendant makes to the payment of any fee in excess of the lodestar is in this sense self–inflicted because of defendant's refusal to make any offer in settlement of the case which included an attorney's fee of $1,000.00.

■ A final consideration for this Court involves the aims of the Act under which this case was brought. *See Hughes v. Repko*, 578 F.2d 483, 488–93 (3d Cir. 1978). The purpose of the Motor Vehicle Information and Cost Savings Act is to insure good faith dealing in the automobile industry, to establish safeguards for the protection of the public and to punish odometer tamperers. The successful conclusion by plaintiffs of *bona fide* cases of violations under this Act will serve to further that congressional goal. *See Duval v. Midwest Auto City, Inc.*, 578 F.2d 721 (8th Cir. 1978).

■ In view of the combination of the foregoing considerations it is reasonable that petitioner should be awarded a fee of $9,000.00. This is slightly less than 50% in excess of the lodestar figure. This is to be compared with an award of attorney's fees in excess of $14,000 in a case where the combined statutory damages were found to be $3,960. *Duval v. Midwest Auto City, supra.*

■ Finally, petitioner seeks leave to amend his application to seek an additional attorney's fee and costs for the time and expense subsequent to the submission of his original petition. The leave requested is granted. Speaking for the Third Circuit in *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir. 1979), Chief Judge Seitz stated, "plaintiff's attorneys [are] entitled to compensation for time spent preparing the fee petition and successfully appealing the fee award when the award [is] statutorily authorized." *See also Prandini v. National Tea Co.*, 585 F.2d 47, 52–54 (3d Cir. 1978); *Levin v. Parkhouse*, 484 F.Supp. 1091, 1094 (E.D.Pa.1980) (time spent must be reasonable). Petitioner is urged, however, to file the supplemental petition promptly, following the filing of which defendant will be given ten days to respond to it. Any affidavits which either of the parties desire to file should accompany their other papers.