James PEPP, Plaintiff,

v.

SUPERIOR PONTIAC GMC, INC. and
General Motors Acceptance
Corporation, Defendants.

Civ. A. No. 75–2839.

United States District Court,
E. D. Louisiana.

Feb. 26, 1976.

Patrick D. Breeden, New Orleans, La.,
for plaintiff.

Frederick W. Bradley, David L. Campbell, Trevor G. Bryan, New Orleans, La.,
·for defendants.

ALVIN B. RUBIN, District Judge:

This case is before the court on cross-motions for summary judgment. For
the reasons that follow, the defendant's

motion is GRANTED, and the plaintiff's motion is DENIED.

On July 14, 1975, the defendant Superior Pontiac received a 1973 Honda Civic as a "trade in" for another car. The odometer reading, as given by the previous owner on the Odometer Mileage Statement at that time was 22,283 miles. Mr. James Aucoin, the defendant's sales manager, who was present when the previous owner filled out the Odometer Mileage Statement, took a four block test drive in the car; he checked it for "reconditioning expenses, . . . the transmission and engine for repairs there, windshield damage, and general overall appearance, tires, interior, exterior." The checklist used in this procedure does not contain a requirement that the odometer be checked; Mr. Aucoin testified in his deposition that another dealership at which he has worked uses a different checklist; this other checklist likewise contains no provision to check the odometer. Mr. Aucoin testified that he did not notice any malfunction of the odometer.

After test driving the car, Mr. Aucoin decided that, since it appeared to be in good shape, Superior should keep it for its own used car lot rather than dispose of it through a wholesale dealer. However, since there were already two other Honda Civic automobiles on the lot at that time, and since summer vacations had reduced the service staff, the car remained in the back yard for two to three weeks. No service was performed on the automobile besides cleaning and "detailing" (a thorough cleaning which includes steam-cleaning the engine).

Only one other Superior employee had occasion to drive the car. Evan J. Lambert, Jr., Superior's used car sales manager, drove the car between a half mile and a mile; he did not notice any odometer problem. He did notice that the speedometer *was* working; he testified that he has never heard of an odometer failing to work if the speedometer was working, since both operate off the same cable.

Mr. Aucoin and Mr. Lambert testified that 22,283 miles would not be unusual for a car of this vintage or condition.

On August 4, 1975, the plaintiff purchased the car in question; at this time the odometer read 22,283.5. Upon inspection of the driver's manual, he discovered that the mileage reading of some eight months before was 22,283, approximately the same as of the time of purchase. Claiming a violation of the Motor Vehicle and Cost Savings Act of 1972, 15 U.S.C. §§ 1901–1991, this suit was filed. For the purposes of this motion, it may be assumed that the mileage disclosure to the plaintiff was incorrect.

Section 1988 provides, "It shall be a violation of this section . . . to violate any rules under this section or to *knowingly* give a false statement to a transferee . . . ." (Emphasis supplied.) The remedies for a violation of Section 1988 are set forth in Section 1989:

(a) Any person who, *with intent to defraud,* violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court. [Emphasis supplied.]

Section 1989 makes it clear that a mere negligent violation, or even a *knowing* violation of the regulations, does not give rise to a cause of action. That section imposes a civil liability only on a person who (a) violates any requirement imposed under this subchapter; (b) and does so "with intent to defraud."

The defendant's employees have attested that they had no actual knowledge that the odometer was malfunctioning. No evidence has been offered that there was a willful violation, and not a scintilla of evidence has ever been hinted

at that would suggest, or that would justify an inference that the defendant had any intent to defraud.

The plaintiff argues that negligence alone might support a finding that Section 1989 was violated. He relies on the Senate Report, as reported in U.S.Code Congressional and Administrative News (1972) pp. 3971–72:

Section 408 makes it a violation of the title for any person "knowingly" to give a false statement to a transferee. This section originally allowed a person to rely completely on the representations of the previous owner. This original provision created a potential loophole, however. For example, a person could have purchased a vehicle knowing that the mileage was false but received a statement from the transferor verifying the odometer reading. Suppose an auto dealer bought a car with a 20,000 mile odometer verification but any mechanic employed by that auto dealer could ascertain that the vehicle had at least 60,000 miles on it. The bill as introduced would have permitted the dealer to resell the vehicle with a 20,000 mile verification. In order to eliminate this potential loophole the test of "knowingly" was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark "true mileage unknown" if, in the exercise of reasonable care, he would have reason to know that the mileage was more than that which the odometer had recorded or which the previous owner had certified.

The example given by the Committee negates the plaintiff's claims. While this language indicates that constructive knowledge will flow from a failure to investigate when the dealer is put on notice that the odometer statement given by the previous owner may be incorrect, it does not evidence an intention to change the meaning of the word "knowingly" to require the defendant to exercise every possible precaution.

■ The plaintiff argues, alternatively, that the defendant knew or should

have known that the odometer was not working and should have provided a notification that the true actual mileage was not known. But there is no evidence to provide a genuine issue concerning knowledge of this, either. At most, the evidence might warrant a finding of negligence in failing to investigate and determine whether the gauge was working. Negligence in this regard is no more a violation of the act than negligence in other respects.

■ Fraudulent intent or intent to deceive cannot be presumed, but such intent may be inferred. *United States v. Vandersee,* 3d Cir. 1960, 279 F.2d 176. Thus, evidence of negligence, especially if gross, might sustain an inference of fraud. It is doubtful here, however, that the evidence would even support a finding of negligence. The defendant conducted its operations according to industry practices, the speedometer was working, and a comparison of the reading on the odometer at the time of sale with the statement given by the previous owner (22,283 v. 22,283.5) showed approximately the mileage the car had been driven while in the defendant's possession. Even if negligence in failing to find that the odometer was not working would support a finding that Section 1988 has been violated, there is no cause of action to sue the seller unless the additional requirements of Section 1989 have been met. There is no evidence before the court on this motion for summary judgment that would warrant a finding of any intention to defraud.

The jurisprudence relied upon by the plaintiff is not apposite. Both cases cited, *Delay v. Hearn Ford,* D.S.C.1974, 373 F.Supp. 791, and *Stier v. Park Pontiac, Inc.,* S.D.W.Va., 391 F.Supp. 397, involved actual turnbacks of odometers while in the hands of defendants. Clearer evidence of "knowledge" could not be shown; intent to defraud might readily be implied.

But it is a different thing to imply intent to defraud from a negligent failure to determine that the odometer was not working. Cf. *Aaron v. Hampton*

*Motors, Inc.,* 1963, 240 S.C. 26, 124 S.E.2d 585, where the court found fraud could be implied where there:

> "[t]he person making the allegedly false representation . . . makes it as of his personal knowledge, with reckless disregard of his lack of information as to its truth . . . ."

Here there was no affirmative statement the odometer was working and no evidence to justify a finding of reckless disregard or lack of information.

■ Summary judgment should not usually be granted on issues of intent, but it is clear that no showing of the requisite intent can be made here. Since this is a non-jury trial, the trier of fact will be the same court that considers the motions. Hence no different mind will draw different inferences. To require the defendant to go to trial is equivalent in cost to the defendant to granting the plaintiff's motion for summary judgment; certainly the costs of defense will equal the statutory penalties. Litigants are indeed entitled to a day in court where disputes are genuine and they concern material fact; but to grant unnecessary trials in cases where no such issues exist is to deny trial dates to other litigants awaiting their chance to be heard by a busy forum. Justice requires a termination of this aspect of this litigation at this point.